## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MATT MEIER, SHERYL MEIER, and KAI BACH, on behalf of themselves and all others similarly situated, )
)
)
)
)

       Plaintiffs, )
)

-vs- )    Case No. CIV-17-703-F
)

CHESAPEAKE OPERATING L.L.C.; DEVON ENERGY PRODUCTION COMPANY, LP; MIDSTATES PETROLEUM COMPANY LLC; NEW DOMINION, LLC; RANGE PRODUCTION COMPANY, LLC; SPECIAL ENERGY CORPORATION; and WHITE STAR PETROLEUM, LLC, )
)
)
)
)
)
)
)
)
)
)

       Defendants. )

## ORDER

Before the court are the following motions:

- Defendant Special Energy Corporation's Special Appearance, Motion to Dismiss (doc. no. 65);

- Devon Energy Production Company, L.P.'s Motion to Dismiss (doc. no. 66);

- Defendant Midstates Petroleum Company LLC's Motion to Strike Pre-Effective Date Allegations (doc. no. 67);

- Defendant White Star Petroleum, LLC's Motion to Dismiss for Failure to State a Claim (doc. no. 68);

- Defendant Midstates Petroleum Company LLC's Motion to Dismiss (doc. no. 69);

- Defendant Range Production Company, LLC's Motion to Dismiss (doc. no. 70);

- Defendant Chesapeake Operating, LLC's Motion to Dismiss Plaintiffs' Petition (doc. no. 71); and

- Defendant New Dominion, LLC's Motion to Dismiss Plaintiff's Class Action Petition (doc. no. 72).

Upon due consideration of the parties' submissions regarding all motions, the court makes its determination.

Background

Plaintiffs, Matt Meier, Sheryl Meier and Kai Bach, bring this action on behalf of themselves and others similarly situated, to recover damages consisting of insurance premiums paid for earthquake insurance for homes and property located in Oklahoma.  Plaintiffs allege that since 2008, defendants' operation of wastewater disposal wells ("injection wells") drilled into the Arbuckle formation has caused thousands of man-made earthquakes throughout large swaths of Oklahoma, and as a result, many Oklahomans have been forced to purchase earthquake insurance to provide financial protection against damage to their homes and property.   In addition, plaintiffs allege that the man-made earthquakes caused by defendants' injection wells have caused the cost of earthquake insurance to soar.  Plaintiffs allege that the substantial increase in earthquake activity in Oklahoma has caused earthquake insurance companies to hike their premiums by as much as 260 percent from 2014 to 2017.   In this action, plaintiffs, for themselves and others similarly situated, seek to recoup the cost of obtaining and maintaining insurance coverage since 2009 under tort theories of public and private nuisance, ultrahazardous activities and negligence.  Specifically, plaintiffs seek the "value of premiums paid

to obtain earthquake insurance coverage" and the "excess amount required to maintain earthquake insurance coverage after 2009." Class Action Petition ("complaint"), doc. no. 1-2, ¶¶ 94, 98, 101 and 105. Plaintiffs additionally seek punitive damages, attorneys' fees, expenses, costs and pre-judgment and post-judgment interest.

Plaintiffs' action was originally commenced in the District Court of Payne County, State of Oklahoma. Defendant, Devon Energy Production, L.P., removed the action to this court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). All named defendants, who according to plaintiffs, are "some of the largest operators of wastewater injection wells in the Arbuckle formation," complaint, doc. no. 1-2, ¶ 3, have now moved, pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss plaintiffs' complaint, on various grounds. In addition, defendant, Midstates Petroleum Company LLC, seeks to dismiss plaintiffs' complaint against it, pursuant to Rule 12(b)(1), Fed. R. Civ. P., because of its bankruptcy case. It has also moved to strike all pre-effective date allegations from plaintiffs' complaint due to the bankruptcy case. Further, defendant, Chesapeake Operating L.L.C., seeks to dismiss plaintiffs' complaint under Rule 12(b)(1) based upon the lack of standing by plaintiffs and the lack of ripeness of their claims. Plaintiffs oppose dismissal on all grounds.

Jurisdictional Issues

*Bankruptcy*

Midstates Petroleum Company, Inc. and defendant, Midstates Petroleum Company, LLC, filed a voluntary petition for relief in the United States Bankruptcy Court for the Southern District of Texas on April 30, 2016. The bankruptcy court entered its findings of fact, conclusions of law, and an order confirming the Chapter 11 plan of reorganization for both of the Midstates debtors on September 28, 2016. The effective date of confirmation of the plan was October 21, 2016. According to

defendant, all claims prior to October 21, 2016 were discharged by the bankruptcy court's order.

In its motion, defendant argues that plaintiffs' claims should be dismissed because the bankruptcy court retained exclusive jurisdiction over all matters arising out of or related to the Chapter 11 proceedings and the plan of reorganization, including any cases, controversies, suits or disputes with respect to discharges, releases and injunctions provided for in the plan. Defendant maintains that plaintiffs' claims implicate the discharge and injunction provisions of the confirmation order and plan. Even if the court were to determine that it has subject matter jurisdiction, defendant argues that plaintiffs cannot assert pre-effective date claims that were discharged as part of the bankruptcy proceedings and those claims should be dismissed. Defendant further argues that all allegations of pre-effective date events should be stricken from the complaint with respect to defendant as plaintiffs are barred from relying on those allegations to support any post-effective date claims, if any.

Plaintiffs, in response, state that defendant believes their claims are based on unidentified earthquakes beginning in 2008 but their "claims are not based on the occurrence of any given or specific earthquake(s) at all." Doc. no. 75, at 37 (emphasis in original). They maintain that their claims are based on the concurrent conduct of defendants in injecting wastewater into the Arbuckle formation – conduct that each defendant continues to engage in to the present day. To that extent, plaintiffs contend that they have alleged that defendant has engaged in post-confirmation conduct for which there is no discharge under the bankruptcy code. Therefore, because the complaint alleges continuing injection activities on the part of defendant, which would include post-confirmation conduct supporting liability for their claims, plaintiffs contend that dismissal is not warranted.

According to plaintiffs, the only question will be defendant's share of the harm caused by the concurrent activities.

In addition, plaintiffs contend that the allegations in the complaint should not be stricken because even if no liability can stem from pre-effective date injection activities, the allegations do have evidentiary value and are not irrelevant.

Defendant, in reply, asserts that plaintiffs do not contest that their claims arising out of pre-effective date conduct are barred by the bankruptcy court's order discharging all claims accruing before the pre-effective date of October 21, 2016. Defendant contends that plaintiffs' pre-effective date events have no place in this case, as an evidentiary matter or otherwise, in light of the effect of the discharge and injunction provisions of the bankruptcy court's order. Defendant argues that the authority cited by plaintiffs does not support reliance on allegations as to pre-effective date events. Further, defendant maintains that plaintiffs' allegations do not sufficiently identify post-confirmation activities.

To the extent plaintiffs seek any relief from defendant based upon injection well activities which occurred prior to October 21, 2016, the court agrees with defendant that plaintiffs cannot recover from defendant, given the bankruptcy discharge. Therefore, the court finds that plaintiffs' claims based upon conduct by defendant prior to October 21, 2016 are subject to dismissal without prejudice for lack of subject matter jurisdiction. However, plaintiffs' claims based upon conduct after October 21, 2016 are not subject to dismissal. The court rejects defendant's argument that plaintiffs' allegations, viewed in a light most favorable to plaintiffs, are too vague to support liability post-effective date. The court also concludes that the bankruptcy court does not have jurisdiction over claims based upon conduct after October 21, 2016. The court therefore grants defendant's dismissal motion under Rule 12(b)(1) in part and denies the Rule 12(b)(1) motion in part. Because plaintiffs' claims against defendant for conduct prior to October 21, 2016 are being dismissed,

the court finds that defendant's motion to strike pre-effective date allegations (doc. no. 67) should be denied as moot.

*Standing and Ripeness*

Defendant, Chesapeake Operating, L.L.C., contends that plaintiffs do not have Article III standing to bring their claims because they have not suffered an injury-in-fact. According to Chesapeake, the payment of insurance premiums is not a legally cognizable injury. However, even if it were, defendant argues that the alleged injury-in-fact is not, for purposes of standing, fairly traceable to the challenged action. Defendant points out that plaintiffs opted to purchase earthquake insurance and therefore created the alleged injury.

In addition, defendant asserts that plaintiffs' claims are not ripe for consideration because plaintiffs made the conscious decision to purchase insurance to cover damage to property which may never occur. Defendant maintains that a case is not ripe for judicial resolution if it involves an uncertain or contingent future event that may not occur as anticipated or may not occur at all. Because damage to plaintiffs' property is not certain to occur, defendant argues that the case involves an uncertain or contingent future event. Defendant posits that plaintiffs' claims "may be adjudicated if and when they ripen into mature claims." Doc. no. 71, at 7.

Plaintiffs counter that defendant's arguments are built on two faulty assumptions: plaintiffs are seeking to recover based on physical harm or damage to property and that any damage must be specifically shown to have been caused by defendant. Plaintiffs contend that they do not seek recovery for any physical harm or damage to property. They are alleging that injection of wastewater by defendant and others contributes to Oklahoma seismic activity and this activity has forced them to purchase earthquake insurance or to pay higher premiums for that insurance. Plaintiffs contend that they do not have to show that the damage they have suffered has been specifically caused by defendant's direct activity vis-à-vis their property.

6

Plaintiffs maintain that they have sufficiently alleged a current, ripe and justiciable injury-in-fact sufficient to overcome dismissal based upon standing and ripeness.

In reply, defendant contends that it recognizes that plaintiffs are not seeking relief based on actual damage but relief for the payment of insurance premiums. Defendant, however, maintains that plaintiffs' claims are not ripe because they have not suffered any actual damage. Payment of insurance premiums, defendant points out, was voluntary. It also points out that insurance by its very nature involves damage that has not yet occurred. Further, defendant contends that plaintiffs have not shown that plaintiffs' alleged injury-in-fact is attributable to defendant's specific actions.

Plaintiffs, as the parties seeking to invoke federal jurisdiction, bear the burden of establishing standing. Cressman v. Thompson, 719 F.3d 1139, 1144 (10th Cir. 2013). When evaluating a plaintiff's standing at the motion-to-dismiss stage, the court must accept as true all material allegations of the complaint and must construe the complaint in plaintiff's favor. Id. Notably, the plaintiff's burden in establishing standing is lightened considerably at the motion-to-dismiss stage. Id.

For Article III standing, a plaintiff must establish (1) that he or she has suffered an injury-in-fact; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely that the injury will be redressed by a favorable decision. Cressman, 719 F.3d at 1144. Defendant, in its motion, specifically challenges the first and second requirements for standing.

As to the first requirement, a plaintiff must suffer an injury-in-fact, which is defined as "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Cressman, 719 F.3d at 1144 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Plaintiffs allege that they have been forced to purchase earthquake insurance coverage or pay artificially high earthquake insurance premiums due to defendants' injection well activities.  *See*, complaint, ¶¶ 4, 67, 68, 69 and 70.   Plaintiffs allege that they have suffered and continue to suffer damages in the form of premiums paid for the earthquake insurance.  *Id.*, ¶¶ 5, 6 and 7.  The court finds that these allegations are sufficient to demonstrate an actual concrete and particularized injury-in-fact. The court can reasonably infer from the allegations that if plaintiffs had not used their money to purchase earthquake insurance, they would have used the money to purchase other things.   Whether plaintiffs can recover their insurance premiums under the tort theories of liability alleged in the complaint is a separate question.  By alleging an economic injury consisting of payment of insurance premiums, which may or may not be recoverable under the theories of liability asserted, plaintiffs have satisfied the injury-in-fact requirement.  *See*, 15 James WM. Moore, *et al.*, <u>Moore's Federal Practice</u> § 101.40[5][6] (3d. ed. 2018) ("The injury-in-fact necessary to support standing may be an economic injury.")

With respect to the second requirement, causation, a plaintiff must show that there is "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant." <u>Lujan</u>, 504 U.S. at 560 (internal quotation marks omitted).  The court, in evaluating the "fairly traceable" standard, is concerned with "'something less than the concept of "proximate cause."'" <u>Nova Health Systems v. Gandy</u>, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting <u>Focus on the Family v. Pinellas Suncoast Transit Authority</u>, 344 F.3d 1263, 1273 (11th Cir. 2003)).

Defendant contends that the alleged injury-in-fact is not fairly traceable to its alleged misconduct because plaintiffs' injury was voluntary.  An injury is "self-inflicted" so as to defeat standing only if "'the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" <u>Backer ex rel. Freedman v. Shah</u>,

788 F.3d 341, 344 (2d Cir. 2015) (quoting St. Pierre v. Dyer, 208 F.3d 394, 402 (2d Cir. 2000)), *see also*, 15 James Wm. Moore *et al.*, Moore's Federal Practice §101.41[1] (3d ed. 2018) ("The fact that a plaintiff in some sense contributed to the injury does not necessarily break the causal connection between the injury and the defendants' conduct to defeat standing."). Although plaintiffs made the decision to purchase earthquake insurance, they nonetheless claim that they purchased it due to defendant's alleged misconduct. "'So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing.'" Backer ex rel. Freedman, 344 F.3d at 344 (quoting St. Pierre, 208 F.3d at 402). In the court's view, plaintiffs' allegations in their complaint are sufficient to show that plaintiff's alleged economic injury was not "solely" attributable to their conduct.

Defendant also argues that plaintiffs have failed to allege facts sufficient to show a connection between defendant's specific actions or omissions and the alleged injury-in-fact. The court, however, concludes that the allegations of the complaint are sufficient to show that plaintiffs' injury-in-fact is fairly traceable (in the relatively loose sense that is relevant here) to defendant's alleged misconduct.

Although not challenged, the court finds that plaintiffs' allegations are sufficient to satisfy redressability – the third standing requirement. Redressability does not require that the plaintiffs, in fact, be entitled to the relief sought. It is enough that the requested relief, if granted, would redress the plaintiffs' alleged injury. 15 James Wm. Moore, *et al.*, Moore's Federal Practice § 101.42[1] (3d ed. 2018) (citing Cranpark, Inc. v. Rogers Group, Inc., 821 F.3d 723, 731 (6th Cir. 2016); Lac Du Flambeau Band of Lake Superior v. Norton, 422 F.3d 490, 501-502 (7th Cir. 2005); and Salmon Spawning and Recovery Alliance v. U.S. Customs and Border Protection, 550 F.3d 1121, 1130-1131 (Fed. Cir. 2008)). Here, the requested relief,

money damages, would redress the alleged economic injury – payment of insurance premiums—of which plaintiffs complain.

Next, the court turns to defendant's argument that the present case is not ripe for adjudication because the case is not fit for a judicial decision and plaintiffs will not suffer any hardship by withholding judicial consideration.  With respect to the former, defendant, as discussed, contends that this case involves uncertain or contingent future events that may not occur as anticipated or may not incur at all.  Defendant contends that plaintiffs have bought insurance to cover damage to property that may never occur.  It also argues that plaintiffs will not suffer any hardship because there is no direct or immediate dilemma for plaintiffs.  Defendant contends that if plaintiffs ever suffer physical damage to their property from an earthquake, they can seek redress for those damages.

Standing and ripeness are closely related because each doctrine focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention.  A claim is not ripe if the alleged injury rests upon "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  Initiative and Referendum Institute v. Walker, 450 F.3d 1082, 1097 (10th Cir. 2006).

Upon review, the court concludes that defendant's ripeness challenge also fails.  Plaintiffs' alleged injury does not depend on uncertain, contingent future events.  Plaintiffs are claiming that they are damaged by paying the premiums they have been paying for earthquake insurance.  Plaintiffs' alleged injury has already occurred and is continuing to occur.   Their alleged injury does not, as defendant argues, rest upon an uncertain or contingent future event.  Accordingly, the court finds the complaint, as framed, is ripe for adjudication.

Sufficiency of Complaint

All defendants have challenged the sufficiency of plaintiffs' complaint under Rule 12(b)(6), Fed. R. Civ. P., on various grounds.   At the Rule 12(b)(6)

motion-to-dismiss stage, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Thomas v. Kaven, 765 F.3d 1183, 1190 (10th Cir. 2014) (quoting Cressman v. Thompson, 719 F.3d 1139, 1144 (10th Cir. 2013)). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Thomas, 765 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Thomas, 765 F.3d at 1190-1191 (quoting Iqbal, 556 U.S. at 678.) Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the plaintiff is entitled to relief. Iqbal, 556 U.S. at 679. However, where the well-pleaded facts nudge a complaint of plaintiff "across the line from conceivable to plausible," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), dismissal is not appropriate.

*Requested Relief*

In this lawsuit, plaintiffs "seek to recoup their costs of obtaining and maintaining earthquake insurance coverage since 2009." Response, doc. no. 75 (citing ¶ 71 and quoting ¶ 4 of the complaint). Defendants specifically challenge plaintiffs' entitlement to recover insurance premiums paid to obtain earthquake insurance coverage or the excess amount paid to maintain the coverage under the tort theories alleged. It is undisputed that plaintiffs have not alleged any damage to their person or their property. They assert a right to recover damages only in the form of their outlays for insurance premiums.

As a federal court sitting in diversity, the court's duty "under *Erie v. Tompkins* principles is of course to conform to Oklahoma's substantive law." Stauth v. National Union Fire Ins. Co. of Pittsburgh, 236 F.3d 1260, 1267 (10th Cir. 2001). And absent definitive direction from the Oklahoma Supreme Court, the court must "predict the course that body would take if confronted with the issue." *Id*. In making that prediction, the court is "free to consider all resources available, including decision of [Oklahoma] courts, other state courts and federal courts, in addition to the general weight and trend of authority." F.D.I.C. v. Schuchmann, 235 F.3d 1217, 1225 (10th Cir. 2000).

Here, both sides agree that neither the Oklahoma Supreme Court nor any other Oklahoma court has addressed whether a plaintiff may recover, as damages in a tort action, monies paid to obtain or maintain insurance coverage to protect against the financial consequences of future events. The court therefore must predict whether such relief is legally cognizable. Although plaintiffs urge the court not to make an "*Erie*-guess" at this stage, *see*, response, doc. no. 75, p. 17, the court concludes that it is in the interest of justice to make the prediction because plaintiffs have sought no form of relief other than recompense for insurance premiums and have not indicated that they have any other cognizable damages. And upon review of the parties' submissions and relevant authority, the court finds that the Oklahoma Supreme Court, if confronted with the issue, would find the relief requested by plaintiffs not legally cognizable under the circumstances present in the case at bar.

In support of the requested remedy, plaintiffs cite various cases where insurance premiums were allowed as damages. The cases, however, involve

plaintiffs who sought recovery on a contractual basis,[1] a statutory basis,[2] or a tort basis entirely distinguishable from this case.[3]  None of the cited cases, in the court's view, support an award of insurance premiums under the circumstances presented in the case at bar.

Defendants point to <u>Nikolaus v. City of Baton Rouge/Parish of East Baton Rouge</u>, 40 So.3d 1244 (La. App. 1st Cir. 2010).  In that case, the plaintiff brought a tort action against defendant city for failure to repair and maintain a drainage system resulting in flood damage to her home.  As part of her damages, plaintiff sought to recover the cost of flood insurance she purchased.  The trial court awarded the damages.  On appeal, the Louisiana appellate court reversed.  In so doing, the court explained that even though plaintiff would not have had to purchase flood insurance but for her flooding problems, it was unaware of any "law or jurisprudence that

---

[1] *See*, <u>Interkal, Inc. v. UIS, Inc.</u>, 132 F.3d 33, 1997 WL 764468, *3 (6th Cir. Dec. 3, 1997) (not legal certainty for jurisdictional purposes that damages for increased insurance premiums were not recoverable; it was a matter of interpretation of the asset purchase agreement); <u>Seifts v. Consumer Health Solutions LLC</u>, 61 F.Supp.3d 306, 327 (recovery of insurance premiums paid when plaintiffs should have been receiving healthcare coverage allowed on a breach of contract claim); <u>Inchaustegui v. 666 5th Ave. Ltd. Partnership</u>, 706 N.Y.S.2d 396, 399 (N.Y.A.D. 1st Dept. 2000) (landlord could recover from subtenant costs of purchasing substitute insurance under breach of contract claim); <u>Supreme Lodge Knights of Pythias v. Neeley</u>, 135 S.W. 1046, 1049 (Tex. Civ. App. 1911) (proper measure of damages for cancellation of life insurance policy is value at time of cancellation; if policy not paid up, its value would be the sum of the policy, less premiums which would become due during the period of its expectancy).

[2] *See*, <u>Awuah v. Coverall N. Am., Inc.</u>, 952 N.E.2d 890, 900 (Mass. 2011) (employee could recover insurance premiums as damages incurred under the enforcement section of the Massachusetts Wage Act).

[3] *See*, <u>Boston Children's Heart Foundation, Inc. v. Nadal-Ginard</u>, 1994 WL 16011252 (D. Mass. 1994) (plaintiff entitled to recover insurance premiums and related payments due to defendant's violation of fiduciary duty to obtain board of directors approval authorizing corporation's purchase of two life insurance policies); <u>Claudet v. Weyrich</u>, 662 So.2d 131 (La. App. 4th Cir. 1995) (plaintiff awarded future cost of insurance premiums in medical malpractice case based upon failure to timely diagnose breast cancer).

allows her to recover for these damages." *Id*. at 1248.  The court concluded that "no right of action exists for recovery of insurance premiums based on a tortfeasor's negligence or strict liability." *Id*.[4]

In reaching its decision, the Nikolaus court relied upon another Louisiana appellate court case, Severn Place Associates v. American Bldg. Services, Inc., 930 So.2d 125 (La. App. 5th Cir. 2006).  The appellate court in that case addressed whether Louisiana law recognizes a cause of action to recover increased insurance premiums arising from a tortfeasor's negligence.  The court found that it did not. The court noted that other states had consistently failed to recognize a cause of action for increased premiums based upon a tortfeasor's negligence.  *Id*. at 128.  Although the court acknowledged that, unlike that case, the majority of the cited cases were workers' compensation cases, the court nonetheless found that "the policy considerations and reasons for denying causes of action in tort apply to the instant case." *Id*. at 129.  Defendants rely upon Severn Place Associates as well as the other cases including those cited by the appellate court[5] to support of their argument that plaintiffs cannot recover for increases in their insurance premiums.  The court opines that in the absence of relevant authority allowing recovery of insurance premiums in the circumstances of this case and in view of the clear weight of authority

---

[4] The court notes that unlike the plaintiffs in this case, the Nikolaus plaintiff had sustained damage to her home and property.

[5]  *See*, Johnson v. Broomfield, 580 N.Y.S.2d 122 (N.Y.Just.Ct. 1991); Silvernail v. Hallenback, 226 N.Y.S.2d 48 (Sup.Ct.N.Y. 1962); Fischl v. Paller & Goldstein, 282 Cal.Rptr. 802 (1991); Unique Paint Co., Inc. v. Wm F. Newman Co., Inc., 411 S.E.2d 352 (1991); RK Constructors, Inc. v. Fusco Corp., 650 A.2d 153 (1994); Schipke v. Grad, 562 N.W.2d 109 (S.D. 1997); Southland Constr., Inc. v. Gr. Orlando Aviation, 860 So.2d 1031 (Fla.App. 5 Dist. 2003); Fountain City Leasing, Inc. v. Key Transport, Inc., 582 N.E.2d 1063 (1989); Vogel v. Liberty Mutual Ins. Co., 571 N.W.2d 704 (Wis. App. 1997); *see also*, The Justicability of Increased Insurance Premium Claims: A Uniformity of Dismissal ?, 30 No. 2 Ins. Litig. Rep. 41.

disallowing recovery of increased insurance premiums, the Oklahoma Supreme Court would not permit plaintiffs' requested relief.[6]

Plaintiffs, in support of their requested relief, also quote from a law review article, David A. Fischer, <u>Tort Recovery for Loss of a Chance</u>, 36 Wake Forest L. Rev. 605, 633 (2001), discussing a category of "loss of a chance" cases – the "proportional risk recovery." The professor, in discussing the recovery, states:

> This [proportional risk recovery] awards a reduced recovery to any person exposed to a risk of future harm that has not yet come to pass. Not all of these persons will actually suffer harm, but each has suffered a loss in an actuarial sense because his chances of avoiding the harm have been reduced. *These kinds of losses can often be insured against, and plaintiffs that use their recoveries to purchase such insurance are not overcompensated. Those plaintiffs that actually suffer the future loss will receive appropriate compensation from their insurance companies. Those plaintiffs that do not suffer the future loss receive nothing from their insurance companies, and thus are not overcompensated.*

---

[6] The court notes that some defendants have presented arguments that plaintiffs cannot recover insurance premiums as damages because (1) they are voluntarily paid; (2) they are barred by the economic loss rule; and (3) they constitute a penalty, fee, fine or other levied charge. The court, however, is not persuaded by these arguments. The facts of this case are clearly distinguishable from the cases applying the voluntary payment rule. *See, e.g.*, <u>Hadley v. Farmers' Nat. Bank of Oklahoma City</u>, 257 P. 1101, 1103-1104 (Okla. 1927) ("Money voluntarily paid under a claim of right to payment, with full knowledge of all of the facts which would entitle the payor to relief against the payment of the claim, cannot be recovered on the ground that the claim was illegal.") The economic loss rule has not been applied by the Oklahoma courts other than in a manufacturer's products liability or negligence action for injury to property itself. *See*, <u>United Golf, LLC v. Westlake Chemical Corp.</u>, 2006 WL 2807342, * 3 (N.D. Okla. 2006); <u>Oklahoma Gas and Electric Company v. Toshiba International Corporation</u>, 2016 WL 3659941, * 5-6 (W.D. July 1, 2016); *see also*, <u>Compsource Oklahoma v. BNY Mellon, N.A.</u>, 2009 WL 2366112, *2 (E.D. Okla. July 31, 2009 ("No authority has been cited from a court in Oklahoma specifically adopting the economic loss rule outside of the products liability arena.") Further, the court is not persuaded that the insurance premiums requested as a remedy, if awarded, would constitute a penalty, fee or fine or other levied charge.

*Id.* at 633 (footnotes omitted and emphasis added).   As an example of the proportional risk recovery, the author cites one of the cases relied upon by plaintiffs, Claudet v. Weyrich, 662 So.2d 131 (La. App. 4th Cir. 1995).   In Claudet, the plaintiff sued her physician for failure to timely diagnose her breast cancer.   Plaintiff's theory of liability, which was accepted by the jury, was that the physician should have diagnosed her cancer while it was in Stage I rather than when it was in Stage II.   If plaintiff had been treated while her cancer was in Stage I, her chance of survival would have been 75 percent.   Her chance of survival, when treated in Stage II, was lower – 42 percent.   The jury awarded general damages of $600,000 based upon a 33% decrease in plaintiff's chance of survival.   In addition to the general damages, the jury also awarded the plaintiff $180,000 in future wages and $30,000 in future costs of insurance premiums.   However, the issue of the recovery of future outlays for insurance premiums was not specifically before the appellate court.   Therefore, the court did not determine whether insurance premiums were recoverable.   The court is not persuaded that the Claudet case or the law review article supports plaintiffs' argument for the recovery of insurance premiums in this case.

Additionally, the court notes that although the Oklahoma Supreme Court adopted the loss of a chance doctrine in McKellips v. Saint Francis Hospital, 741 P.2d 467 (1987), it only did so in "a limited type of medical practice case."   *Id.* at 474; *see also*, Hardy v. Southwestern Bell Telephone Co., 910 P.2d 1024, 1025-1026 (Okla. 1996) ("[A]n action for loss of chance of survival may not be expanded to apply in an ordinary negligence action brought against one other than a medical practitioner or a hospital.").   Moreover, the McKellips case did not involve a proportional risk recovery as discussed in the law review article.   The Oklahoma Supreme Court specifically determined that for the loss of a chance, the "amount of damages recoverable is equal to the percent of chance lost multiplied by the total amount of damages which are ordinarily allowed in a wrongful death action."

McKellips, 741 P.2d at 476.  The damages as determined by the Oklahoma Supreme Court would not include insurance premiums.

Plaintiffs also suggest that they should be able to recover insurance premiums as a remedy based upon Article 2, Section 6 of the Oklahoma Constitution[7] and 23 O.S. 2011 § 3[8] and § 61.[9]  In McCormick v. Halliburton, 895 F. Supp. 2d 1152, 1156-1157 (W.D. Okla. 2012), the plaintiffs, who had been exposed to hazardous waste but who had not yet suffered personal injury, sought a medical monitoring remedy.  Like plaintiffs in this case, the McCormick plaintiffs similarly relied upon the cited constitutional and statutory provisions to support their requested remedy. Judge Miles-LaGrange, however, found that neither the constitutional provision nor the statutory provisions supported a conclusion that medical monitoring remedy was available under Oklahoma law.   The court concludes that the same is true with respect to plaintiffs' request for recovery of insurance premiums.

In interpreting the constitutional remedy guarantee in Article 2, Section 6, the Oklahoma Supreme Court has held that Section 6 is intended "to guarantee that the judiciary would be open and available for the resolution of disputes, but not to

---

[7] Article 2, § 6 provides:

> The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

[8] Section 3 of Title 23 provides:

> Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.

[9] Section 61 of Title 23 provides:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

guarantee that any particular set of events would result in court-awarded relief." <u>City of Anadarko v. Fraternal Order of Police, Lodge 118</u>, 934 P.2d 328, 330 (Okla. 1997) (quotation omitted). It is "most often used to insure equal access to court, regardless of status." <u>Id</u>. Section 6, thus, in the court's view, does not guarantee plaintiffs a specific remedy. Hence, the court concludes that Section 6 does not support a conclusion that plaintiffs are entitled to the remedy of recovery of insurance premiums.

With respect to the statutory provisions, Section 3 and Section 61 of Title 23, the Oklahoma courts have determined that these provisions declare or codify common law. <u>See</u>, <u>WRG Constr. Co. v. Hoebel</u>, 600 P.2d 334, 336 (Okla. 1979); <u>Commercial Fin. Servs., Inc. v. J.P. Morgan Secs, Inc.</u>, 152 P.3d 897, 900 (Okla. Civ. App. 2006). Recovery of insurance premiums, including increased insurance premiums, has not been recognized under Oklahoma common law. The court therefore concludes that the statutory provisions do not support a finding that plaintiffs are entitled to recoup their insurance premiums.

The crux of the matter is that plaintiffs seek to recover the cost, or increased cost, of insuring against a risk, or heightened risk, of earthquake damage which has not yet occurred. In determining the circumstances in which a claimed loss may be shifted to an alleged tortfeasor, tort law in general, and Oklahoma tort law in particular, focuses (among other things) on: (i) the severity of the risk of loss, (ii) the nature of the activity causing the specific loss complained of by the plaintiff, and (iii) whether the loss asserted by the plaintiff – here, premiums or increased premiums paid for earthquake insurance – is sufficiently distinct from the general vicissitudes of life that (even if caused by the alleged tortfeasor, a matter not addressed in this order) the loss may be laid at the feet of the alleged tortfeasor. The vicissitudes of life unavoidably present risks of harm which, equally unavoidably, vary in terms of severity and actual impact on any particular individual. As a

prerequisite to the existence of a viable cause of action (*i.e.* the right to use the machinery of the state to compel payment of recompense for the asserted loss), the law generally awaits the *materialization* of that risk in the form of some tangible harm, which generally must consist of personal injury or property damage.  This limitation simply recognizes the fact that life abounds with events and phenomena by which a generalized risk faced by one person is increased in some way by the activities of another.  The law waits for something more concrete to happen – for the risk to materialize.  The Oklahoma Supreme Court has made it clear that these fundamental precepts are not modified by the constitutional and statutory provisions relied upon by the plaintiffs.

Here, the risk of earthquake damage, though present like most any other kind of risk, has not *materialized*: plaintiffs have suffered no damage to their homes or their persons.  The court concludes that the Oklahoma Supreme Court would not allow recovery of earthquake insurance premiums or an increase in earthquake insurance premiums when plaintiffs have not sustained earthquake damage to their property or to their person.

The court notes that in their complaint, plaintiffs assert that they have been "forced" to purchase earthquake insurance or to pay higher rates for such coverage.  Complaint, doc. no. 1-2, ¶¶ 2-4, 67, 93.  In their briefing, they argue that their payments are being made under "duress."  Response, doc. no. 75, p. 25.  To the extent plaintiffs seek to recover their insurance premiums based upon a theory of economic duress, the court finds that plaintiffs are not entitled to that relief.  The Oklahoma Supreme Court has previously held that economic duress is not an independent tort under Oklahoma law.  *See*, Cimarron Pipeline Const., Inc. v. U.S. Fidelity & Guar. Ins. Co., 848 P.2d 1161, 1162 (Okla. 1993).  Therefore, plaintiffs may not seek compensation for their insurance premiums based on a theory of economic duress.

Lastly, in addition to actual damages for insurance premiums, plaintiffs request punitive damages. Because plaintiffs are not entitled to recover the actual damages they seek, the court also concludes that they may not recover the punitive damages requested.  23 O.S. 2011 § 9.1 ("In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may . . . award punitive damages for the sake of example and by way of punishing the defendant . . . ."); *see also*, OUJI-CIV No. 5.6 (2018)("If you find in favor of [plaintiff] and grant [him/her] actual damages . . . ." and OUJI-CIV No. 5.9 (2018) ("[Y]ou have found in favor of the plaintiff and granted him/her actual damages . . . .").

Plaintiffs are not entitled to recover any of the relief they seek in their pleadings.  They have not requested leave to amend to seek any other relief, nor have they indicated that they are entitled to seek any other cognizable relief.  For these reasons, the court concludes that dismissal of plaintiffs' complaint under Rule 12(b)(6) is required.  The court therefore concludes that defendants' motions to dismiss should be granted and the class action petition with respect to plaintiffs' individual claims should be dismissed with prejudice.[10]

Class Allegations and Claims

Plaintiffs have brought their claims on behalf of themselves as well as on behalf of others similarly situated.  The court has not yet addressed whether certification of a class would be appropriate.  Nonetheless, the court may rule on motions pursuant to Rule 12, such as the ones before it, before deciding on class certification.  *See*, Manual for Complex Litigation (Fourth) § 21.133.  The court's ruling to grant the motions to dismiss, however, is only binding on the named parties. *Id*.; *see also*, Nicholas v. Saul Stone & Co. LLC, 224 F.3d 179, 181 n. 1 (3rd Cir.

---

[10] Given the court's ruling, the court need not address other arguments raised by defendants in support of dismissal under Rule 12(b)(6).

2000); <u>McKenzie v. City of Chicago</u>, 118 F.3d 552, 555 (7th Cir. 1997) ("Because a class has not been certified, the only interests at stake are those of the named plaintiffs.").   In light of the fact the court now grants the Rule 12(b)(6) motions to dismiss filed by defendants as to plaintiffs' individual claims, the court disregards the class action allegations as moot.   The court adjudicates nothing as to the appropriateness of class treatment (an issue that it is not necessary to address) or as to the rights of any persons other than the named parties to this action.

<u>Conclusion</u>

Based upon the foregoing,

Defendant Midstates Petroleum Company, LLC's Motion to Dismiss (doc. no. 69) is **GRANTED in part** and **DENIED in part** to the extent it seeks dismissal under Rule 12(b)(1), Fed. R. Civ. P. and is **GRANTED** to the extent it seeks dismissal under Rule 12(b)(6), Fed. R. Civ. P.;

Defendant, Chesapeake Operating, LLC's Motion to Dismiss Plaintiff's Petition (doc. no. 71) is **DENIED** to the extent it seeks dismissal under Rule 12(b)(1), Fed. R. Civ. P., and is **GRANTED** to the extent it seeks dismissal under Rule 12(b)(6), Fed. R. Civ. P.; and

All other defendants' Rule 12(b)(6) motions to dismiss (doc. nos. 65, 66, 68, 70, and 72) are **GRANTED**.

With respect to the named plaintiffs, the Class Action Petition against defendant, Midstate Petroleum Company, LLC, is **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction as to claims based upon injection well activities which occurred prior to October 21, 2016 and is **DISMISSED WITH PREJUDICE** under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted as to claims based upon injection well activities which occurred after October 21, 2016.

With respect to the named plaintiffs, the Class Action Petition against all other defendants is **DISMISSED WITH PREJUDICE** under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief may be granted.

In light of the court's disposition of the claims asserted by and against the named parties to this action (the only parties before the court), no action is necessary with respect to the class action allegations in the Class Action Petition and those allegations are disregarded as **MOOT**.[11]

In light of the court's ruling, Defendant Midstates Petroleum Company LLC's Motion to Strike Pre-Effective Date Allegations (doc. no. 67) is **DENIED as MOOT**.

Judgment shall enter forthwith.

IT IS SO ORDERED this 13th day of August, 2018.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

17-0703p012.docx

---

[11] *Cf.*, Rule 12(f), Fed.R.Civ.P. (striking immaterial matter in a pleading by the court acting on its own or on motion); Rule 23(d)(1)(D), Fed. R. Civ. P. (allowing court to require pleadings to be amended to eliminate class allegations).  The court sees no reason to strike the class action allegations or require the pleadings to be amended to do so because they are now a nullity.